1  Matthew G. Ball (SBN 208881)
2  Matthew.Ball@klgates.com
   **KIRKPATRICK & LOCKHART**
3  **PRESTON GATES ELLIS LLP**
   55 Second Street, Suite 1700
4  San Francisco, CA 94105
   Telephone:     415.882.8200
5  Facsimile:     415.882.8220
6
7  Attorneys for Financial Technology Partners L.P.

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11 FINANCIAL TECHNOLOGY PARTNERS L.P.,    Case No. C 07 1298 JWS
   a Delaware Limited Partnership,
12                                        **PLAINTIFF FINANCIAL TECHNOLOGY**
                                          **PARTNERS L.P.'S OPPOSITION TO**
13            Plaintiff,                  **DEFENDANTS' MOTION TO DISMISS**

14       vs.                             Date:  April 27, 2007
15                                        Time:  9:00 a.m.
   FNX LIMITED, a Pennsylvania Corporation,   Dep't:  2
16 FARID NAIB, an individual, and Does 1-10,  Judge:  Jeffrey S. White
17            Defendants.
18
19
20
21
22
23
24
25
26
27
28

SF-129234 v3

---

1

## **<u>TABLE OF CONTENTS</u>**

2  INTRODUCTION ............................................................................................................. 1

3  FACTS ............................................................................................................................... 2

4  ARGUMENT ..................................................................................................................... 3

5  I.   The Language Of The Contract Supports Plaintiff's Entitlement To A $750,000 Fee For The

6       Sale Of FNX To GL Trade. ........................................................................................ 3

7  II.  Alternatively, This Court Should Deny The Motion Because The Disputed Language Is At

8       Minimum Ambiguous. ................................................................................................ 7

9  III. Plaintiff's Claim For Breach Of The Covenant Of Good Faith And Fair Dealing Is Sufficiently

10      Pled. .......................................................................................................................... 9

11  CONCLUSION ................................................................................................................ 11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITY**

2

**TABLE OF AUTHORITIES**

3

**CASES**

4

Conley v. Gibson,

5
     355 U.S. 41 (1957) ............................................................................................... 10

6

Glassmere Fuel Serv., Inc. v. Clear,

7
     900 A.2d 398 (Pa. Super. Ct. 2006) ...................................................................... 9

8

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,

9
     507 U.S. 163 (1993) ............................................................................................. 10

10

Marder v. Lopez,

11
     450 F.3d 445 (9th Cir. 2006) ................................................................................. 8

12

Martin Marietta Corp. v. International Telecommunications Satellite Organization,

13
     991 F.2d 94 (4th Cir. 1993) ................................................................................... 7

14

Morey v. Vannucci,

15
     64 Cal. App. 4th 904 (1998) .................................................................................. 6

16

National City Police Officers' Association v. National City,

17
     87 Cal. App. 4th 1274 (2001) ................................................................................ 4

18

Orr v. Petersen,

19
     28 Cal. App. 4th 1742 (1994) ................................................................................ 5

20

Pacific Gas & Electric Co. v. G.W. Thomas Drayage Co.,

21
     69 Cal. 2d 33 (1968) ............................................................................................. 8

22

Realty Group Associate, Inc. v. Divosevic,

23
     596 A.2d 880 (Pa. Super. Ct. 1991) ...................................................................... 9

24

Trident Center v. Connecticut Gen'l Life Insurance Co.,

25
     847 F.2d 564 (9th Cir. 1988) .............................................................................. 7, 8

26

Vailette v. Fireman's Fund Insurance Co.,

27
     18 Cal. App. 4th 680 (1993) .................................................................................. 9

1

Wolf v. Superior Court,
114 Cal. App. 4th 1343 (2004) ................................................................ 8

2

3

**STATE STATUTES**

4

California Civil Code Section 1641 ................................................................ 4

5

California Civil Code Section 1647 ................................................................ 7

6

California Civil Code Section 1649 ................................................................ 8

7

California Civil Code Section 1652 ................................................................ 5

8

**TREATISE AUTHORITY**

9

1 B.E. Witkin, Summary of California Law § 801 (10th Ed. 2005) ........................................... 10

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

This case is a contract dispute between a financial advisor, Financial Technology Partners, L.P. ("FT Partners") and its former client, FNX Limited ("FNX" or the "Company"). FT Partners asserts that FNX Limited and Farid Naib, as guarantor, breached a Financial Advisory Agreement (the "Advisory Agreement") to pay FT Partners more than $856,000 in fees earned on finance transactions, and further contends that FNX has an obligation under the Advisory Agreement to pay an additional $750,000 upon sale of FNX to another company.[1] While not all of Defendants' defenses are now known, Defendants have moved to dismiss FT Partners' claim for the $750,000 fee on the basis that the language of the Advisory Agreement provides no contractual obligation to pay the $750,000 upon the sale of FNX, and that FT Partners' claim for breach of the covenant of good faith and fair dealing is merely duplicative of its contract claims.

Defendants' arguments both ignore and misconstrue the operative language of the Advisory Agreement providing for post-termination compensation upon a sale of FNX. The language of Advisory Agreement read in full, and in context, provides for minimum compensation of $750,000 if the Company is sold at any time after termination of the Advisory Agreement. Moreover, Defendants' argument regarding the covenant of good faith and fair dealing ignores federal notice pleading standards, and the true nature of Plaintiff's claim. Accordingly, the Motion to Dismiss should be denied.

---

[1] Currently, this $750,000 claim is pled as a claim for declaratory relief, because at the time the First Amended Complaint was filed, the sale of FNX to GL Trade had not yet closed, and thus FNX was not yet in breach of contract. Complaint ¶¶ 26, 47-52. Now that the sale has apparently closed, (Defendants' Motion (hereinafter "M'tn") at 2, n.2), Defendants are in breach of the Advisory and the Guaranty Agreement, and Plaintiff will be seeking leave to amend the complaint to add an additional claim for breach of contract, and to dismiss the claim for declaratory relief. Other than the form of the claim pled, and the fact that the sale has closed, there will be no substantive change to the allegations concerning the sale of FNX to GL Trade.

SF-129234 v3

1

1

## **FACTS**

2     Defendants' recitation of the allegations in the First Amended Complaint is incomplete.

3 Critical to an understanding of this dispute is how agreements such as the Advisory Agreement are

4 intended to function.

5     The Advisory Agreement is an outcome-based fee agreement.  Complaint ¶ 10.  Financial

6 advisors such as FT Partners commonly enter into such agreements.  Id. at ¶ 11.  The parties to such

7 agreements understand that an advisor operating under such agreement will devote substantial

8 resources and effort to a client over a long period of time, and provide the client with a substantial

9 amount of useful advice and work product, with nothing more than minimal fees (if any) and expense

10 reimbursement in return – until that day comes when the advisor's advice and efforts finally result in

11 a substantial transaction, or series of transactions, at which time the advisor is fully compensated.  Id.

12     The risks of such outcome-based advisory agreements, from the perspective of financial

13 advisors, are twofold.  Id. at ¶ 12.  First, there is a risk that a client will benefit from an advisor's

14 work efforts, receive substantial work product and valuable advice, and then conclude a substantial

15 transaction with a person or entity that the client purportedly contacted on its own.  Id.  Second, there

16 is a risk that a client may benefit from the advisor's work, and then terminate the agreement when a

17 substantial transaction appears on the horizon, or even before such a transaction appears, in order to

18 avoid the outcome-based fee.  Id. at ¶ 13.  To mitigate these risks, financial advisors generally

19 provide a "tail" provision that provides for post-termination compensation.  Id.

20     This is exactly what FT Partners alleges has happened here.  FT Partners alleges that FNX

21 benefited from FT Partners' substantial efforts and first-class work product, terminated FT Partners to

22 avoid paying outcome-based fees, and even used FT Partners' work product in at least some of the

23 transactions for which FNX should have paid FT Partners.  Id. at ¶¶ 15-21, 26-28.  FT Partners

24 further alleges that the post-termination compensation provision of the Advisory Agreement, quoted

25 in full below, provides for a minimum fee of $750,000 on sale of the Company at any time after

26 termination, which also has not been paid.

27

1

## ARGUMENT

2       Defendants' Motion to Dismiss should be denied for three reasons.

3       First, the language of the Advisory Agreement supports Plaintiff's claim to the $750,000 sale

4   to GL Trade.  Unlike Defendants' construction, which ignores critical language, misconstrues other

5   language, and results in a conflict between two contract provisions, Plaintiff's reading explained in

6   Section I below gives effect to all of the disputed contractual language, does not result in a conflict,

7   and makes sense in the context of the contract as a whole and of the relevant surrounding

8   circumstances.

9       Second, although Plaintiff believes its construction is correct and the only logical construction

10  of the clause at issue, the language of the clause at issue is at least ambiguous, and therefore this

11  Court may not dismiss Plaintiff's contract claim on the pleadings.

12      Third, Defendants' argument concerning the claim for breach of the covenant of good faith

13  and fair dealing is faulty, because not only are Plaintiff's allegations sufficient under the notice

14  pleading allowed by the Federal Rules of Civil Procedure, the allegations of the complaint reveal that

15  the claim is clearly not duplicative of Plaintiff's contract claims.

16  **I.    The Language Of The Contract Supports Plaintiff's Entitlement To A $750,000 Fee For**

17  **The Sale Of FNX To GL Trade.**

18      This is the language at issue in this Motion:

19          Our services may be terminated by you or us at any time with or without cause
20          effective upon written notice to that effect.  We will be entitled to the applicable
            transaction success fee set forth above in the event that at any time prior to the
21          expiration of one year after such termination an agreement is entered into with respect
            to a sale of all or a portion of the stock or assets of the Company which is eventually
22          consummated; provided, however, that upon the sale of the Company as described
            herein, the fee paid to FT Partners shall never, under any circumstance, including
23          those described in this paragraph, be less than $750,000.

24  Complaint, Exh. 1.

25      Defendants argue that the language "provided, however, that upon the sale of the Company as

26  described herein, the fee paid to FT Partners shall never, under any circumstance, including those

27  described in this paragraph, be less than $750,000", applies only to the minimum amount of the

3

1    applicable fee for the sale of FNX, if the sale occurs within a year of the termination of the Advisory

2    Agreement.  M'tn at 4:1-6.  This argument fails, because it ignores three bedrock principles of

3    contract interpretation.

4    　　　　First, Defendants' construction ignores the principle that courts should avoid an interpretation

5    of a contract that results in surplus language in the contract.  <u>National City Police Officers' Ass'n v.</u>

6    <u>National City</u>, 87 Cal. App. 4th 1274, 1279 (2001); <u>see</u> <u>also</u> Cal. Civ. Code § 1641 ("The whole of a

7    contract is to be taken together, so as to give effect to every part, if reasonably practicable, each

8    clause helping to interpret the other.")

9    　　　　For example, Defendants' construction completely reads out of the contract the phrase

10   "including those described in this paragraph", which makes clear, when read in context with the

11   preceding words "never, under any circumstance," that the provision is an <u>exception</u> to the one-year

12   tail period described in the first part of the paragraph, so that a minimum $750,000 payment is due on

13   the sale of the Company at any time after termination.

14   　　　　The phrase, "including those described in this paragraph" refers to the "circumstance"

15   described in the first part of the post-termination compensation paragraph – <u>i.e.</u>, the termination of

16   the Advisory Agreement, and a sale of all or part of the stock or assets of FNX within one year of

17   termination.  If the entire "provided however" clause pertained only to the minimum amount of the

18   applicable fee, as Defendants argue, the phrase "including those described in this paragraph" would

19   be wholly redundant.  For the phrase "including those described in this paragraph" to mean anything,

20   it has to mean that the $750,000 fee for the sale of FNX must also apply in circumstances <u>not</u>

21   described in "this paragraph," <u>i.e.</u>, a circumstance <u>other</u> than a sale of FNX taking place within the

22   one-year tail period.

23   　　　　Accordingly, the question then becomes, when, and in what circumstance, other than a sale of

24   FNX taking place within the one-year tail period, would the $750,000 minimum fee apply?  For that,

25   the Court need look no further than the rest of the clause:  "the fee paid to FT Partners shall <u>never</u>,

26   under <u>any</u> circumstance [] be less than $750,000."  (Emphasis added).  The word "never" in the

27

OPPOSITION TO MOTION TO DISMISS

1   Advisory Agreement is clearly a temporal concept, rather than a concept dealing with amount.[2]  The

2   only reading of this clause that makes sense, that gives effect to all the language in this paragraph,

3   and does not result in a conflict of minimum fee provisions as discussed below, is that the $750,000

4   minimum fee applies even outside of the circumstance described in the paragraph, i.e., at any time

5   after the one-year tail period.

6       Moreover, the phrase "upon the sale of the Company as described herein" does not refer to the

7   timing of the sale, as Defendants imply in the Motion.  M'tn at 4:6-11.  Rather, it refers to the nature

8   of the sale – specifically, the sale of 50% or more of the common stock or assets of the company

9   described in the third paragraph of Exhibit 1 to the Complaint.  If Defendants' construction of the

10  phrase "as described herein" – i.e., that it refers to a sale of the Company within the one-year tail

11  period (M'tn at 4:6-8) – was correct, the words "including those described in this paragraph" would

12  again be read out of the contract, since "this paragraph" contains the only reference to the one-year

13  tail period in the contract, and would result in a conflict of contractual provisions, as discussed below.

14      The second principal of contract interpretation that Defendants' construction ignores is that

15  "Contradictory or inconsistent provisions of a contract are to be reconciled by interpreting the

16  language in such a manner that will give effect to the entire contract."  Orr v. Petersen, 28 Cal. App.

17  4th 1742, 1753 n.4 (1994); Cal. Civ. Code § 1652 ("Repugnancy in a contract must be reconciled, if

18  possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to

19  the general intent and purpose of the whole contract.")  Here, under Plaintiff's construction, there are

20  no contradictory or inconsistent provisions.  Defendants' construction, on the other hand, creates

21  inconsistent provisions, and does not reconcile them.

22      Specifically, Defendants' position is that the language "upon the sale of the Company as

23  described herein, the fee paid to FT Partners shall never, under any circumstance, including those

24

25  _____

26  [2]  The American Heritage Dictionary, Third Edition, defines "never" as (1) "[n]ot ever; on no
    occasion; at no time" and (2) "not at all; in no way; absolutely not."  See Attachment 1 to this

27  Opposition.  The first definition gives additional meaning – i.e., a temporal dimension – to the clause
    as a whole.  The second definition of the word "never" renders the next phrase, "under any
    circumstance", redundant, especially in light of the next phrase, "including those described in this
    paragraph."

described in this paragraph, be less than $750,000" provides a minimum fee for the sale of the Company during the one-year tail period.  However, under Defendants' construction, there is a serious conflict with the immediately preceding language in the same paragraph:  "We will be entitled to the applicable transaction success fee set forth above in the event that at any time prior to the expiration of one year after such termination an agreement is entered into with respect to a sale of all or a portion of the stock or assets of the Company which is eventually consummated."  The Advisory Agreement clearly provides that the minimum "applicable transaction success fee" for a sale of "all    . . . the stock or assets of the Company" is $1 million.[3]  Thus, under Defendants' interpretation, there are two conflicting minimum fees for the sale of the Company during the one-year tail – either $1 million, or $750,000.

Under Plaintiff's construction, however, there is no conflict.  Under Plaintiff's construction, the Advisory Agreement provides two minimum fees for a post-termination sale of the Company that apply <u>at different times</u> – a $1 million minimum for a sale within the one-year tail period, and a $750,000 minimum for the sale at any time after the one-year tail period.  This interpretation makes sense in context of the contract as a whole.  During the one-year tail, it is much more likely that FT Partners' services will have added the value that led to the sale of the Company – thus justifying the higher minimum fee.  The lower post-tail minimum fee recognizes that FT Partners' advice is more distant in time, but also that FT Partners is entitled to be paid at least $750,000 for its substantial efforts when there is an eventual sale of FNX.

The third principle of contract interpretation that Defendants' reading ignores is the principle that the interpretation of a contract does not begin and end with the text of the agreement; rather, the Court must also consider "extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract [and] the object, nature and subject matter of the contract."  <u>Morey v. Vannucci</u>, 64 Cal. App. 4th 904, 912 (1998); see also

---

[3]  The specific language is from page one of the Advisory Agreement, and provides as follows:  "If the purchase of 50% or more of the outstanding common stock or the assets (based on the book value thereof) of the Company is accomplished . . . we will charge a transaction success fee . . . that in no event will [] be less than $1.0 million."

1   Cal. Civ. Code § 1647 ("A contract may be explained by reference to the circumstances under which

2   it was made, and the matter to which it relates").

3        Here, the Advisory Agreement contemplated that FT Partners would devote a substantial

4   amount of resources to FNX over a substantial period of time, as well as provide FNX with valuable

5   advice and work product, without receiving any upfront compensation, or potentially any

6   compensation at all.  Complaint ¶¶s 10-15.  Indeed, the Advisory Agreement specifically provides

7   that FT Partners would waive upfront and monthly retainer fees.  Id. at Exhibit 1.  In a sense, FT

8   Partners is in the same position as a lawyer who agrees to represent a client on a contingent fee basis,

9   and who works up the case and incurs substantial costs, only to be replaced with another lawyer who

10  takes the case to verdict.  As with contingent-fee attorneys who take steps to ensure they will be paid

11  for their efforts even though the verdict might take place several years later at the hands of another

12  lawyer, FT Partners needed to ensure that it, too, would be paid for its valuable work, even if a sale of

13  FNX took place years after FNX terminated its services.  It did so through the post-termination

14  compensation clause that is now in dispute.

15       Because Defendants' construction renders surplus significant phrases in the contract,

16  misconstrues other phrases in the context of the phrases Defendants do not take into account, results

17  in a conflict, and does not take into account the surrounding circumstances and object of the contract,

18  Defendants' construction should be rejected, and its Motion denied.

19  **II.    Alternatively, This Court Should Deny The Motion Because The Disputed Language Is**

20  **At Minimum Ambiguous.**

21       FT Partners contends that its construction is correct, and the only construction that makes

22  sense.  The above discussion demonstrates, nevertheless, that even if the Court disagrees with FT

23  Partners' construction, the language is at minimum ambiguous.  Where this is the case, it is improper

24  to grant a motion to dismiss.  Trident Center v. Connecticut Gen'l Life Ins. Co., 847 F.2d 564, 568-

25  69 (9th Cir. 1988); see also Martin Marietta Corp. v. Int'l Telecommunications Satellite Organization,

26  991 F.2d 94, 97 (4th Cir. 1993) ("[t]he construction of ambiguous contract provisions is a factual

27  determination that precludes dismissal on a motion for failure to state a claim").  Even where the

1  contract appears unambiguous on its face to the Court, it is improper to grant a motion to dismiss and

2  thus refuse the party claiming ambiguity an opportunity to introduce extrinsic evidence.  Trident

3  Center, 847 F.2d at 568-569.  The California Court of Appeal, citing the controlling California

4  Supreme Court opinion of Pacific Gas & Elec. Co. v. G.W. Thomas Drayage Co., 69 Cal. 2d 33, 39-

5  40 (1968), perhaps says it most eloquently:

> Where the meaning of the words used in a contract is disputed, the trial court ***must*** provisionally receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning.  Indeed, it is ***reversible error*** for a trial court to refuse to consider such extrinsic evidence on the basis of the trial court's own conclusion that the language of the contract appears to be clear and unambiguous on its face.

11  Wolf v. Superior Court, 114 Cal. App. 4th 1343, 1350-51 (2004) (emphasis added, citations omitted).

12  As described above, FT Partners contends that its construction is the only construction that makes

13  sense.  But at the very least, the disputed language of the Advisory Agreement is at least reasonably

14  susceptible to the meaning that FT Partners has advanced.  Accordingly, FT Partners is entitled to

15  prove up its meaning through the introduction of extrinsic evidence.  Here, among the extrinsic

16  evidence that FT Partners intends to introduce are communications made before the dispute over the

17  sale arose – and even before the sale itself – where FT Partners expresses its view of the now-

18  disputed paragraph (i.e., that the $750,000 on the sale of FNX is not subject to the one-year tail

19  period), and FNX in return, though expressing concern with the reading, fails to expressly deny that

20  FT Partners' reading of the contract is correct.  See Cal. Civ. Code § 1649 ("If the terms of a promise

21  are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor

22  believed, at the time of making it, that the promisee understood it.").  Thus, to grant a motion to

23  dismiss here would be improper.

24  　　　Defendants' authority is not to the contrary.  In Marder v. Lopez, 450 F.3d 445 (9th Cir.

25  2006), cited in footnote 3 of the Motion, the Court acknowledged the plaintiff's ability to introduce

26  extrinsic evidence to vary the meaning of an otherwise clear agreement, but found that the plaintiff

"offered no such extrinsic evidence." Id. at 449.[4]  Here, not only is the disputed language at least ambiguous on its face, FT Partners has also set forth its intention to submit extrinsic evidence to support its reading of the contract.

Vailette v. Fireman's Fund Ins. Co., 18 Cal. App. 4th 680 (1993), also cited in footnote 3, is distinguishable as well.  In Vailette, the plaintiff did not appear to raise the issues of ambiguity and extrinsic evidence that FT Partners raises here.  There is certainly no discussion of such issues in the opinion.  This case is accordingly inapposite.

Defendants also cite two Pennsylvania opinions in support of their argument, and assert that "the law of California and Pennsylvania reach the identical conclusions on the issues presented by this motion to dismiss."  M'tn at 3, n. 3 (citing Glassmere Fuel Serv., Inc. v. Clear, 900 A.2d 398, 401-4 (Pa. Super. Ct. 2006) & Realty Group Assoc., Inc. v. Divosevic, 596 A.2d 880, 882 (Pa. Super. Ct. 1991).  This conclusion is doubtful, and is in any case irrelevant, because the Advisory Agreement makes clear that it will be governed by California law.  Complaint, Exh. 1, Annex A (incorporated in the Advisory Agreement by reference) (". . . this letter shall be governed by and construed in accordance with the laws of the State of California without regard to the principles of conflicts of laws.")[5]

Accordingly, if this Court does not adopt FNX's construction of the Advisory Agreement outright, the disputed language is at least ambiguous, and this Court should deny the Motion to dismiss in accordance with established and controlling precedent.

## III.  Plaintiff's Claim For Breach Of The Covenant Of Good Faith And Fair Dealing Is Sufficiently Pled.

Finally, Defendants argue that the claim for breach of the covenant of good faith and fair dealing should be dismissed because it is duplicative of the breach of contract claim.  M'tn at 4:15 – 5:17.  This argument should be rejected for two reasons.

---

[4] Later in the opinion, the court discusses the fact that the plaintiff did offer some extrinsic evidence, but that the evidence did not advance an interpretation to which the contract was reasonably susceptible.  Marder, 450 F.3d at 453.

[5] For this reason, Pennsylvania law on the breach of the covenant of good faith and fair dealing, cited in footnote 4 of the Motion, is also irrelevant.

1     First, the federal rules do not require a plaintiff to allege facts constituting the claim for relief.

2   The rules require only that Defendants receive fair notice of Plaintiff's claim.  <u>Leatherman v. Tarrant</u>

3   <u>County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 168-69 (1993); <u>Conley v. Gibson</u>,

4   355 U.S. 41, 47-48 (1957).  There can be no doubt that FT Partners' claim gives Defendants fair

5   notice of its claim and thus satisfies federal notice pleading standards.

6     Second, FT Partners' claim is <u>not</u> duplicative of its contract claims.  As Defendants point out,

7   the covenant of good faith and fair dealing prevents one contracting party from unfairly frustrating

8   the other party's right to receive the benefits of the agreement actually made.  M'tn at 4:17-20.  The

9   essence of the good faith covenant is "objectively reasonable" conduct.  1 B.E. Witkin, <u>Summary of</u>

10  <u>California Law</u> § 801 (10th Ed. 2005).  It includes, among other things, "evasion of the spirit of the

11  bargain . . . ."  <u>Id.</u> at § 799.

12    A fair reading of FT Partners' complaint reveals that one of FT Partners' theories is that FNX

13  accepted FT Partners' substantial efforts and work product for more than 18 months, and then, after

14  benefiting from those efforts, terminated the Advisory Agreement shortly before entering into

15  lucrative transactions, specifically, the Conning-Lazard transactions described in Paragraph 19 of the

16  Complaint, for which it used FT Partners' work product – all in order to avoid paying FT Partners.

17  Complaint ¶¶ 15, 17-20.  This certainly describes conduct that is, in Defendants' words, "more than

18  the breach of the contractual dut[ies]" described in the Advisory Agreement.  M'tn at 4:21-23.

19  Indeed, the Advisory Agreement allowed FNX to terminate the Agreement at any time, but did not

20  allow FNX to time its termination so that it could take advantage of FT Partners' efforts and work

21  product, close substantial transactions shortly thereafter, and then fail to pay the required fees.  Few

22  would argue that FNX's conduct was "objectively reasonable" or did not evince an "evasion of the

23  spirit of the bargain."  Moreover, this theory is separate and apart from Plaintiff's contract theories,

24  which focus on the breach of contract provisions requiring payment of the fees for the transactions

25  described in the Complaint, and to pay expenses.  In the cases Defendants cite (M'tn at 4:20-5:17),

26  the Court found essentially no difference between the contract claims and the claim for breach of the

27  covenant of good faith and fair dealing.  Those cases are accordingly distinguishable.

1    Because Plaintiff's claim satisfies the standard for notice pleading under the Federal Rules of

2    Civil Procedure, and is not duplicative of the contract claims, Defendants' Motion on this point

3    should be denied.

4                                            **<u>CONCLUSION</u>**

5    Defendants' Motion ignores provisions of the contract and is based on a faulty contract

6    construction, a misapprehension of the law of contract interpretation, and a misunderstanding of

7    federal notice pleadings standards and Plaintiff's claim for breach of the covenant of good faith and

8    fair dealing.  For the foregoing reasons, Plaintiff respectfully requests that the Motion be denied.

9

10                                              KIRKPATRICK & LOCKHART PRESTON
                                               GATES ELLIS LLP
11

12

13   Dated:  March 28, 2007              By:   _____
                                                        /s/ Matthew G. Ball
14                                             Matthew G. Ball        (SBN 208881)
                                               matthew.ball@klgates.com
15
                                               Attorneys for Plaintiff Financial Technology
16                                             Partners L.P.

17

18

19

20

21

22

23

24

25

26

27