1  H. JOSEPH ESCHER III (No. 85551)
   h.joseph.escher@dechert.com
2  DECHERT LLP
   One Maritime Plaza
3  Suite 2300
   San Francisco, California  94111-3513
4  Telephone:   415.262.4500
   Facsimile:    415.262.4555
5
   Attorneys for Defendants
6  FNX LIMITED and FARID NAIB

7

8             UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10

11 | FINANCIAL TECHNOLOGY           | Case No. C 07 1298 JWS
   | PARTNERS L.P. a Delaware Limited|
12 | Partnership,                    | **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
13 |           Plaintiff,            |
                                     | (Fed. R. Civ. P. 12(b)(6))
14 | v.                              |
                                     | Date:   April 27, 2007
15 | FNX LIMITED., a Pennsylvania    | Time:   9:00 a.m.
   | corporation, FARID NAIB, an individual,| Dep't:  2
16 | and DOES 1-10,                  | Judge:  Jeffrey S. White
17 |           Defendants.           |

**INTRODUCTION**

Interpreting the Advisory Agreement to entitle plaintiff to $750,000 upon the sale of all or a portion of FNX no matter how far in the future, even if plaintiff was not involved in the transaction, is not only contrary to the plain language of the Advisory Agreement, but it leads to an absurd result. Under plaintiff's interpretation of the contract, plaintiff would be owed a success fee even if FNX was sold twenty years after termination of the Advisory Agreement. There is no indication in the contract that either party ever contemplated such an absurd outcome; on the contrary, the contract explicitly limits plaintiff's fee to transactions completed during the duration of the Advisory Agreement and within one year of its termination. Plaintiff's claim for fees based on the sale of FNX to GL Trade three years after termination therefore should be dismissed.

In addition, plaintiff has not identified any basis for liability other than FNX's failure to pay plaintiff's fees and expenses. Plaintiff's claim for breach of the covenant of good faith and fair dealing accordingly should also be dismissed as superfluous.

**ARGUMENT**

**I.**

**THE ADVISORY AGREEMENT DOES NOT PROVIDE FOR ANY FEES AFTER EXPIRATION OF THE ONE-YEAR TAIL PERIOD.**

Defendants' straightforward interpretation of the Advisory Agreement is based on common sense, gives effect to every provision in the contract, and furthers the objectives of the contract. The tail provision simply and clearly protects the fruits of plaintiff's labors for one year after termination of the Advisory Agreement. Relying on a selective and truncated reading of the Advisory Agreement, plaintiff instead argues that the clause which provides a minimum recovery of $750,000 conflicts with an earlier contractual provision providing for a minimum recovery of $1 million. *See* Opp'n at 5-6. The $1 million fee plaintiff refers to, however, only pertains to the success fee owed to plaintiff in the event of "the purchase of 50% or more of the outstanding common stock or the assets" of FNX. Opp'n at 6. Plaintiff erroneously assumes that the phrase "upon the sale of the Company as described herein" refers only to the sale of 50% or more of the common

1  stock or assets of the company (Opp'n at 5), even though the termination provision clearly
2  refers to sales of "all or a portion of the stock or assets of the Company."  First Amended
3  Complaint ("FAC"), Ex. 1 at 3, ¶6.  Plaintiff fails to address the separate provision in the
4  Advisory Agreement that pertains to the sale of less than 50% of the company:  "If less
5  than 50% of the outstanding common stock or the assets . . . of the Company is acquired
6  in the manner set forth in the preceding sentence, we will charge a transaction success fee
7  to be mutually agreed upon by FT Partners and the Company but in no event less than
8  *either* (i) 5.0% of the aggregate consideration paid in such transaction or transactions or
9  (ii) $1.0 million."  FAC, Ex. 1 at 1, ¶3 (emphasis added).

10  Under the terms of the Advisory Agreement, the parties must mutually agree as to
11  which of these two methods of calculating the minimum fee is appropriate.  Plaintiff thus
12  would be guaranteed to receive $1 million under either method only if the aggregate
13  consideration for the transaction was at least $20 million.  If the consideration did not
14  exceed $20 million, plaintiff could receive less.  For example, in the event that less than
15  50% of FNX were sold for $19 million, plaintiff would be entitled to a $1 million fee or to
16  5% of the consideration (in this hypothetical, $950,000).  If the purchaser paid $13 million
17  to purchase less than 50% of FNX, then plaintiff would be entitled to either $1 million or
18  $650,000.  In light of this analysis, plaintiff's argument that it will always be entitled to a
19  $ 1 million success fee is plainly erroneous.  The minimum of $750,000 does not conflict
20  with the remainder of the Advisory Agreement, but simply provides a minimum amount
21  for qualifying sales of FNX's common stock or assets that occur after but within a year of
22  termination of the contract.

23  Nor does FNX's interpretation of the clause "result[] in surplus language in the
24  contract."  Opp'n at 4.  The phrase "including those [circumstances] described in this
25  paragraph" refers to the circumstances described in that paragraph:  the sale of FNX after,
26  but within one year of, termination of the Advisory Agreement.  Plaintiff contends that in
27  order for this provision to have any meaning, it must mean that the $750,000 fee for the
28  sale of FNX must apply in circumstances not described in that paragraph, which plaintiff

1  contends are sales of FNX occurring outside of the one year tail period.  However, under
2  plaintiff's interpretation, this minimum would apply to qualifying sales of FNX's common
3  stock or assets occurring prior to termination of the Advisory Agreement because such
4  sales are not described in the paragraph, even though the Advisory Agreement specifies
5  different minimums depending upon whether the sale involved less or more of 50% of the
6  common stock or assets of FNX.  The language "never, under any circumstance, including
7  those described in the paragraph" does not create an exception to the termination
8  provision, but simply clarifies that the minimum of $750,000 applies to qualifying sales of
9  FNX common stock or assets occurring after but within a year of termination regardless of
10 the occurrence of events not specifically addressed by the termination provision.

11  Plaintiff also urges the Court to consider extrinsic evidence regarding the object of
12 the Advisory Agreement, which according to plaintiff was to ensure that it would be paid
13 for its valuable work, even if the transaction closed after FNX terminated the Advisory
14 Agreement.  *See* Opp'n at 6-7.  That is precisely what the one-year tail provision does.
15 Plaintiff is simply attempting to rewrite the terms of the contract to extend that one-year
16 term indefinitely.

17  Finally, plaintiff asks the Court to deny the motion to dismiss because it *intends* to
18 introduce unspecified (and not yet alleged) extrinsic evidence of pre-dispute
19 communications where "FNX . . . though expressing concern with [plaintiff's reading of
20 the disputed language], fails to expressly deny that FT Partners' reading of the contract is
21 correct."  Opp'n at 8 (emphasis added).  The Advisory Agreement is not reasonably
22 susceptible to entitling plaintiff to a fee for the sale of the FNX regardless of how many
23 years have passed after the advisory agreement is terminated, and therefore extrinsic
24 evidence is not admissible. *See Pacific Gas & Electric Co. v. G.W. Thomas Drayage &*
25 *Rigging Co., Inc.*, 69 Cal. 2d 33, 37 (1968) (the test of whether extrinsic evidence is
26 admissible is "whether the offered evidence is relevant to prove a meaning to which the
27 language of the instrument is reasonably susceptible"); *see also Barris Indus., Inc. v.*
28 *Worldvision Enterprises, Inc.*, 875 F.2d 1446, 1450 (9th Cir. 1989) ("if the extrinsic

1 evidence advances an interpretation to which the contract is not reasonably susceptible, the extrinsic evidence is not admissible"). Further, plaintiff's proposed evidence is entirely irrelevant to "prove the intention of the parties." *Id.* at 40. Email correspondence, occurring after the Advisory Agreement was executed (*see* Opp'n at 8), is not relevant to whether the parties intended at the time the contract was negotiated and executed to award plaintiff a fee for transactions occurring years after the Advisory Agreement was terminated. Even if the disputed language were susceptible to plaintiff's interpretation, plaintiff failed to attach the alleged communications to its Opposition.

Plaintiff's attempts to distinguish *Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006) are ineffective. First, announcing the intention to offer extrinsic evidence does not constitute offering such evidence. Second, in *Marder*, the plaintiff did offer extrinsic evidence of the defendant's subsequent conduct to prove her claim for breach of contract, but the Court's "interpretation of the [contract was] not affected by [plaintiff's] allegations" regarding the subsequent conduct. *Marder*, 450 F.3d at 453 ("That Paramount considered creating a sequel that was never made does not change the effect of the Release with respect to claims based on the movie that *was* made. . . . Her proposed interpretation of the Release is inconsistent with its terms"). Thus, *Marder* is directly on point, as plaintiff has not actually offered any extrinsic evidence to prove a meaning to which the language of the contract is reasonably susceptible.

Plaintiff originally pleaded this as a claim for declaratory relief. Now that the GL Trade has closed, however, plaintiff indicates that it will seek leave dismiss its claim for declaratory relief and to amend its Complaint to plead another breach of contract claim instead. *See* Opp'n at 1, fn. 1. Defendants agree that the form of the claim plead is immaterial for purposes of this motion to dismiss, and that the result should be the same whether the claim is plead as one for declaratory relief or for breach of contract.

## II.

## THE CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING IS LEGALLY INSUFFICIENT BECAUSE IT IS MERELY DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM.

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing simply seeks to enforce the terms of the Advisory Agreement.  However, if "the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated."  *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990).  Plaintiff argues tautologically that *Careau* is distinguishable because there, "the Court found essentially no difference between the contract claims and the claim for breach . . . of good faith and fair dealing."  Opp'n at 10.  Of course, defendants' argument is that here too, there is essentially no difference between the two claims.  None of plaintiff's allegations involve anything more than breach of the contractual duty to pay plaintiff's fees and costs pursuant to the Advisory Agreement.  This is insufficient to plead a claim for breach of the covenant of good faith and fair dealing.  *Careau*, 222 Cal. App. 3d at 1394.

FNX's termination of the Advisory Agreement, by itself, does not constitute a breach of the covenant of good faith and fair dealing.  The essence of that covenant is indeed "objectively reasonable conduct."  Opp'n at 10.  However, breach of a contract does not amount to unreasonable conduct *per se*.  Something more is required, for example, "[w]hen a party has the unilateral right to change the terms of a contract, it does not act in an objectively reasonable manner when it attempts to recapture a foregone opportunity by adding an entirely new term that has no bearing on any subject, issue, right, or obligation addressed in the original contract and that was not within the reasonable contemplation of the parties when the contract was entered into."  1 B. Witkin, *California Law*, Contracts § 801 (10th ed. 2005).  Plaintiff here does not allege that FNX attempted to insert a new term into the contract that was not within the reasonable

1  contemplation of the parties when they signed the Advisory Agreement.  On the contrary,
2  it simply alleges that FNX availed itself of the termination provision and refused to pay
3  the fees that plaintiff alleges it is entitled to.  Plaintiff does not dispute that the Advisory
4  Agreement gave FNX the ability to terminate the Agreement at will, the existence of the
5  one-year tail provision, or the fact that the sale occurred more than one year after
6  termination of the Advisory Agreement.  Plaintiff instead attempts to insert into the
7  Agreement an unlimited tail provision that does not exist.  FNX is not attempting to
8  "add[] an entirely new term" to the Advisory Agreement; plaintiff is.

## CONCLUSION

Plaintiff's interpretation of the Advisory Agreement is supported neither by logic nor by the language of the contract, and its claim for breach of the implied covenant of good faith and fair dealing is entirely duplicative of its claim for breach of contract. Plaintiff's third and fourth claims should accordingly be dismissed without leave to amend.

Dated:  April 4, 2007

Respectfully submitted,

DECHERT LLP
H. JOSEPH ESCHER III


By: _____/S/_____
    H. JOSEPH ESCHER III
    Attorneys for Defendants
    FNX LIMITED and FARID NAIB