IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINANCIAL TECHNOLOGY PARTNERS L.P., | |
| Plaintiff, | No. C 07-01298 JSW |
| v. | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |
| FNX LIMITED, FARID NAIB, and DOES 1-20 | |
| Defendants. | |

Now before the Court is the motion to dismiss filed by defendants FNX Limited ("FNX") and Farid Naib (collectively, "Defendants"). The Court finds that this matter is appropriate for disposition without oral argument and it is hereby deemed submitted. *See* Civ. L.R. 7-1(b). Accordingly, the hearing set for June 29, 2007 is HEREBY VACATED. Having carefully considered the parties' arguments and relevant legal authority, the Court hereby denies Defendants' motion.

**BACKGROUND**

This action concerns a contract dispute between FNX and plaintiff Financial Technology Partners, L.P. ("FT Partners"). In September 2002, the parties executed a Financial Advisory Agreement ("Agreement") under which FT Partners provided FNX with financial and strategic advice regarding the possible sale of all or a portion of FNX. (First Amended Complaint ("FAC"), ¶¶ 9-10, Ex. 1.)[1] FNX terminated the Agreement in March 2004. (*Id.*, ¶ 17.) FT

---

[1] The parties agree that the motion to dismiss should be applied to the First Amended Complaint. (Docket No. 21.)

Partners alleges that it was not paid for services rendered pursuant to the Agreement. More specifically, FT Partners alleges that FNX owes it money from the following transactions: (1) in June 2003, FNX obtained $2 million in convertible debt financing from Trident Capital; (2) in September 2004, FNX received $10 million in funding from Conning Capital Partners and Lazard Technology Partners in exchange for FNX stock; and (3) in January 2007, GL Trade agreed to acquire FNX. (*Id.*, ¶¶ 16, 19, 26.) FT Partners further alleges that FNX failed to reimburse FT Partners for its expenses, which exceed $36,000. (*Id.*, ¶ 24.) FT Partners asserts causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief. Under its claim for declaratory relief, FT Partners seeks a judicial declaration regarding whether FNX owes it money under the Agreement based on the sale of FNX to GL Trade. (*Id.*, ¶¶ 49, 50.)

FNX now moves to dismiss the claim for declaratory relief and claim for breach of the implied covenant of good faith and fair dealing. The Court will address additional specific facts as required in the analysis.

**ANALYSIS**

**A.     Legal Standard on a Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. A motion to dismiss should not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts supporting his or her claim. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Thus, dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding,* 467 U.S. 69, 73 (1984). The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged. *Cleggy v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

1    Documents whose contents are alleged in a complaint and whose authenticity no party
2    questions, but which are not physically attached to the pleading, may be considered in ruling on
3    a Rule 12(b)(6) motion to dismiss. Such consideration does not convert the motion to dismiss
4    into a motion for summary judgment. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994);
5    *United States v. Ritchie*, 343 F.3d 903, 908 (9th Cir. 2003).

**B.     Defendants' Motion.**

    **1.     Claim for Declaratory Relief.**

FNX argues that because the GL Trade sale occurred more than one year after the Agreement was terminated, it does not owe any money to FT Partners under the clear language of the Agreement. (Mot. at 3.) FT Partners reads the language of the Agreement differently. Under FT Partner's interpretation, FNX's obligation to pay FT Partners does not have a temporal end. (Opp. at 1.)

Under California law, "[t]he interpretation of contracts ... involves a complex interplay of questions of fact and questions of law." *City of Santa Clara v. Watkins*, 984 F.2d 1008, 1012 (9th Cir. 1993). Whether a contract term in a written agreement is ambiguous is a question of law for the Court to decide. *Id*. A contract term is ambiguous if it is reasonably susceptible to more than one meaning. *ASP Properties Group v. Fard, Inc.*, 133 Cal. App. 4th 1257, 1270 (2005). In order to determine whether a contract term is ambiguous, "[e]ven if the written agreement is clear and unambiguous on its face, the trial judge must receive relevant extrinsic evidence that can prove a meaning to which the language of the contract is 'reasonably susceptible.'" *City of Santa Clara*, 984 F.2d at 1012; *Pacific Gas & E. Co. v. G. W. Thomas Draya*g*e & Rigging Co., Inc.*, 69 Cal.2d 33, 37 (1968) ("The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.").

The language at issue in the Agreement is as follows:

> Our services may be terminated by you or us at any time with or without cause effective upon receipt of written notice to that effect. We will be entitled to the applicable transaction success fee set forth above in the event that at any time prior to the expiration of one year after such termination an agreement is entered into

3

> with respect to a sale of all or a portion of the stock or assets of the Company which is eventually consummated; *provided, however, that upon the sale of the Company as described herein, the fee paid to FT Partners shall never, under any circumstance, including those described in this paragraph, be less than $750,000.*

(FAC, Ex. 1 at 3) (emphasis added.)

Defendants argue that this provision expressly limits their obligation to pay FT Partners for transactions completed after the agreement is terminated to transactions that are completed within one year of the termination. (Mot. at 3.) According to Defendants, the highlighted language in the above provision merely sets a minimum payment owned to FT Partners. (*Id*. at 3-4.) FT Partners counters that Defendants' interpretation ignores the language "including those described in this paragraph," and that giving meaning to this phrase must mean that the obligation to pay at least $750,000 applies to circumstances in addition to sales consummated within one year of termination. (Opp. at 4.) FT Partners further argues that the language "never, under any circumstance" means that the obligation to pay at least $750,000 applies to the sale of the Company *at any time* after termination.

The Court finds that the contract language is ambiguous when read in light of the entire Agreement. In a paragraph preceding the one at issue, the Agreement sets the minimum transaction success fee for a sale of the company. If more than 50 percent of the FNX is sold, FT Partners will be owed a minimum transaction success fee of $1 million. If less than 50 percent of FNX is sold, FT Partners will be owed a transaction success fee agreed to by both parties, but in no event less than five percent of the consideration paid or $1 million. (FAC, Ex. 1 at 1.) The paragraph at issue provides FT Partners will be owed the transaction success fee if all or a portion of FNX's stock or assets are sold within one year of the Agreement being terminated. (FAC, Ex. 1 at 3.) While the Court agrees that it is unlikely that FNX would agree to pay FT Partners at least $750,000 for any sale transaction after the Agreement is terminated regardless of when it occurs, the meaning of the language "provided, however, that upon the sale of the Company as described herein, the fee paid to FT Partners, shall never, under any circumstance, including those described in this paragraph, be less than $750,000" is unclear. In light of the fact that the Agreement sets forth the minimum transaction success fees and the

Agreement provides that such fee will be paid for any agreement to sell FNX made within one year of the Agreement's termination, reading the provision at issue as merely setting a minimum payment renders it either superfluous or conflicting with the preceding paragraph.

Moreover, even if the language were not ambiguous on its face, FT Partners is entitled to have an opportunity to present evidence to demonstrate the existence of a latent ambiguity. Defendants' argument that FT Partners should be denied this opportunity because it has not yet proffered any evidence is misplaced. On a motion to dismiss, it would be improper for the Court to consider evidence that is not incorporated into a complaint or judicially noticeable. Accordingly, the Court denies Defendants' motion as to the claim for declaratory relief.

**2.      Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.**

Defendants move to dismiss FT Partners' claim for breach of the implied covenant of good faith and fair dealing on the grounds that it is entirely duplicative of its breach of contract claim. (Mot. at 4.) "[U]nder California law, all contracts have an implied covenant of good faith and fair dealing." *In re Vylene Enterprises, Inc.*, 90 F.3d 1472, 1477 (9th Cir. 1996) (*citing Harm v. Frasher*, 181 Cal.App.2d 405, 417 (1960)). The covenant "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat. Inc.,* 24 Cal.4th 317, 349 (2000). However, the covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id*. Thus, to the extent a plaintiff seek to impose limits "beyond those to which the parties actually agreed, the [implied covenant] claim is invalid. To the extent the implied covenant claim seeks simply to invoke terms to which the parties *did* agree, it is superfluous." *Id*. at 352 (emphasis in original); *see also Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,* 222 Cal. App. 3d 1371, 1395 (1990) (holding that if the allegations supporting a claim for breach of the implied covenant of good faith and fair dealing "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated."). "The central teaching of *Guz* is that in most cases, a claim for breach of the

implied covenant can add nothing to a claim for breach of contract." *Lamke v. Sunstate Equipement Co., LLC.*, 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004).

Nevertheless, a plaintiff may bring implied covenant claim where the plaintiff alleges that the defendant acted in bad faith to frustrate the contract's benefits. *See Guz,* 24 Cal. 4th at 353 n.18 (acknowledging that "the covenant might be violated if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled...."); *see also McCollum v. XCare.net, Inc.*, 212 F. Supp. 2d 1142, 1153 (N.D. Cal. 2002) (applying California law).

In *McCullum*, the plaintiff alleged that she was hired as a sales manager to consummate an agreement with the defendant company's client. *McCollum*, 212 F. Supp. 2d at 1144. Plaintiff earned a base salary plus commissions. *Id.* According to plaintiff, the client was to sign a two-year contract that would have provided the defendant company approximately $10 million in revenue. The agreement was intended to be signed on October 12, 2000 and was actually signed on October 20, 2000. However, the defendant company terminated the plaintiff effective on October 11, 2000. *Id.* at 1144-45. The court found that there was evidence from which a fact finder could find that the defendant company intended to frustrate the plaintiff's legitimate expectations to commissions by terminating the plaintiff less than two weeks before the agreement with the client was signed, and thus found the defendant was not entitled to summary judgment on the claim for breach of the implied covenant of good faith and fair dealing. *Id.* at 1153.

Similarly here, FT Partners argues that it alleges that FNX terminated the Agreement shortly before entering into lucrative transactions in order to avoid paying FT Partners compensation for such transactions. (Opp. at. 10.) Reading the FAC in the light most favorable to FT Partners, the Court agrees that it sufficiently alleges a claim for breach of the implied covenant of good faith and fair dealing. Accordingly, the Court denies Defendants' motion to dismiss as to this claim.

6

**CONCLUSION**

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss. The Court FURTHER ORDERS that the Case Management Conference scheduled for June 29, 2007 at 9:00 a.m. will be held at 1:30 p.m. on June 29, 2007.

**IT IS SO ORDERED.**

Dated: June 27, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE