1  H JOSEPH ESCHER III (No. 85551)
    h.joseph.escher@dechert.com
2  D. CHRISTOPHER BURDETT (No. 230342)
    cburdett@dechert.com
3  DECHERT LLP
    One Maritime Plaza
4  Suite 2300
    San Francisco, California 94111-3513
5  Telephone: 415.262.4500
    Facsimile: 415.262.4555

6

7  Attorneys for Defendants
    FNX LIMITED and FARID NAIB

8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                        SAN FRANCISCO DIVISION
11

12

13  FINANCIAL TECHNOLOGY              Case No. C 07 1298 JSW
    PARTNERS L.P. a Delaware Limited
14  Partnership,                      Action Filed: Jan. 30, 2007
                                      ORDER REGARDING
15              Plaintiff,            DEFENDANTS' ~~UNRESOLVED~~
                                      DEPOSITION OBJECTIONS
16  v.
                                      Trial Date: July 6, 2009
17  FNX LIMITED., a Pennsylvania      Time:       9:00 a.m.
    corporation, FARID NAIB, an individual,  Dep't:      Courtroom 11, 19th Floor
18  and DOES 1-10,                    Judge:      Honorable Jeffrey S. White

19              Defendants.

20

21

22

23

24

25

26

27

28

DECHERT LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' UNRESOLVED DEPOSITION OBJECTIONS          C 07 1298 JSW

**Testimony of Phillip F. Bell, taken on May 13, 2008 (excerpts attached as Exhibit A).**

| Designations: | Defendants' Objection | Plaintiff's Response | Court's Ruling |
|---|---|---|---|
| 15:19-17:21 | Relevance, Rule 403

The fact that Naib mentioned the litigation briefly to Mr. Bell is not relevant to any issue in the case.

The testimony is more prejudicial than probative because pursuant to the Court's ruling on the jury instructions, the parties' behavior *after* a dispute has arose between the parties should not be considered by the jury to interpret the terms of the contract. | Designation should go to 17:21. Plaintiff feels this is relevant to give the jury of the context in which he answered the questions – some, but minimal contact with Mr. Naib. | Sustained |
| 57:9-11; 57:16-20 | Lack of foundation

Witness states that he "had no experience in terminating an agreement like this" indicating no foundation for the answer. | Mr. Bell's answer shows he has the requisite knowledge to answer this question. | Overruled |
| 76:1-24 | Relevance, Rule 403

The issue of whether the defendants were "happy" with the plaintiff's work while the Advisory Agreement was in effect is not relevant to any claim or | This is relevant to the intended scope for the assignment (Mr. Naib claims the engagement was only intended to be for the sale of FNX to another company), and is relevant to undercut Mr. Naib's later claims and insinuations that FT | Overruled |

| | | | |
|---|---|---|---|
| | defense in the action. | Partners was not providing worthwhile services on the Conning transaction or generally. It is also relevant to Plaintiff's claim for the reasonable value of services. | |
| 78:16-21 | Relevance, Rule 403<br><br>The issue of whether the defendants were "happy" with the plaintiff's work while the Advisory Agreement was in effect is not relevant to any claim or defense in the action. | This testimony is relevant for the same reasons as the previous designation. | Overruled |

## II. Testimony of Farid Naib, taken on May 14, 2008 (excerpts attached as Exhibit B)

| Designations: | Defendants' Objection | Plaintiff's Response | Court's Ruling |
|---|---|---|---|
| 84:13-20 | Partial answer<br><br>The rule of completeness requires that the answer include 84:21-85:1. | Designation should be 84:13-20. | Sustained. The additional testimony shall be read. |
| 101:1-3 | Partial answer<br><br>The rule of completeness requires that the last statement in the answer "I just wanted him to help me get out of this kind of bad position he had put me in." | Plaintiff here moves to strike 101:1-3 as nonresponsive to the question. 101:1-3, beginning with "I just" should not be read to the jury. The rule of completeness does not apply; the last statement has nothing to do with the previous testimony. | Overruled |
| 127:19-24 | Lack of foundation<br><br>Witness states that he is "guessing" and | Designation withdrawn, but to the extent Mr. Naib testifies at trial about | Moot based on withdrawal. |

| | | | | |
|---|---|---|---|---|
| | | "speculating." | the purpose of that meeting, Plaintiff intends to use this portion of the transcript to impeach Mr. Naib. | |
| | 139:10-14 | Lack of foundation<br><br>Witness clearly states that he cannot recall. | Plaintiff believes that it is relevant and admissible that Mr. Naib has no recollections about conversations concerning consequential Exhibit 12, which relates to the fee for the Conning transactions. | Sustained |
| | 202:18-203:18 | Hearsay, relevance. Rule 403<br><br>The witness is reading hearsay statements by Mr. McLaughlin. To the extent that the testimony is not hearsay, it is not relevant to any claim or defense and is more probative than prejudicial pursuant to Rule 403. | The designation should continue through 203:21. The statement by Mr. McLaughlin is not offered for its truth. Rather, Mr. Naib is being asked for his understanding of what Mr. McLaughlin was trying to accomplish, and to give context to the "gentlemen's agreement."<br><br>Plaintiffs' position regarding the "gentlemen's agreement" is that it was part of an attempt by Mr. McLaughlin to modify the Advisory Agreement, in an attempt to get FNX to rescind the termination, but was rejected. Mr. Naib's testimony, especially at 203:15-21, supports that position. | Sustained |
| | 206:24-215:11 | Hearsay, inadmissible settlement communications, Rule 403 | Response to 206:24 – 210:1<br><br>Mr. McLaughlin's | Sustained |

| | | | |
|---|---|---|---|
| | The testimony consists of statements that Mr. McLaughlin made to Naib and is therefore inadmissible hearsay.<br><br>Further, the testimony consists of settlement communications. By August, 2004 a dispute had clearly developed between the parties as to the Conning-Lazard transaction and fees claimed over the Trident bridge loan. The parties were discussing possible solutions, such as "work[ing] along the lines of our old waiver letter." 212:10-13.<br><br>The testimony is more unfairly prejudicial than probative because pursuant to the Court's ruling on the jury instructions, the parties' behavior *after* a dispute has arose between the parties should not be considered by the jury to interpret the terms of the contract. | statements in the e-mail are not being offered for their truth. Rather, they are offered primarily as foundation for Mr. Naib's response (which is of course an admission). Plaintiff's theory is that one of the reasons FT Partners was not paid on the Conning transaction was that Conning did not want its money going to pay a financial advisor, and that FNX did not want to pay because it wanted to use the Conning investment for its business operations and to pay Mr. Naib. The e-mail, as well as the testimony, supports this theory.<br><br>Additionally, Exhibit 32 is not a settlement communication or an offer to compromise or compromise negotiations, rather, Mr. McLaughlin made a demand, which was refused. Moreover, these communications are not being offered to show "liability for, invalidity of, or amount of a claim that was disputed as to validity or amount . . ."<br><br>Finally, the testimony here is not being used to interpret the contract – it is to show the real reason why FNX did not want to pay FT Partners for a transaction that clearly closed during the "tail" period. | |

| | | 210:2 – 215:11 | |
|---|---|---|---|
| | | This exchange relates to Exhibit 33. Again, this is not a settlement communication, because there is no offer to compromise. Rather, it is again a continued demand for payment that is refused. | |
| | | Plaintiffs' position regarding the "gentlemen's agreement" is that is was part of an attempt by Mr. McLaughlin to modify the Advisory Agreement, in an attempt to get FNX to rescind the termination, but was rejected. Mr. Naib's testimony, especially his testimony at 211:15 – 17 that the attempted modification was "kind of a dead deal" – supports this theory. | |
| | | The testimony also supports Plaintiff's theory regarding the reasons that Defendants refused to pay a fee on the Conning transaction. Also, it refers to the waiver letter of June 2003, which shows Mr. Naib's understanding that the Advisory Agreement did require a fee for the Conning transaction, which is contrary to the position Defendants are taking now. | |
| | | As above, this testimony does not fall | |

| | | | | |
|---|---|---|---|---|
| | | | within the protections of Rule 408. | |
| | 217:4-220:6 | Hearsay, inadmissible settlement communications, Rule 403<br><br>The document is hearsay because it contains statements by Mr. McLaughlin offered for the truth of the matter asserted.<br><br>Further, the testimony consists of settlement communications. By August, 2004 a dispute had developed between the parties as to the Conning-Lazard transaction and fees claimed over the Trident bridge loan. The testimony relates to the parties' settlement discussions at that time. Steve McLaughlin's email referenced as FNX 00952 (217:23) expressly states "We preliminary propose the following, to settle". *See* Exh. 34.<br><br>The testimony is more unfairly prejudicial than probative because pursuant to the Court's ruling on the jury instructions, the parties' behavior *after* a dispute has arose between the parties should not be considered by the jury to interpret the terms of the contract. | The McLaughlin e-mail is not being offered for its truth; only that Mr. McLaughlin took the position at that time.<br><br>Mr. Naib's communication is not an offer to compromise; it is again a refusal to negotiate. | Sustained |
| | 220:24-223:19 | Hearsay, Inadmissible settlement communications, Rule 403<br><br>The testimony consists of settlement communications. By August, 2004 a dispute had developed between the parties as to the Conning-Lazard transaction and fees claimed over the Trident | The issue regarding the estimated expenses is relevant to Defendants' course of conduct. Defendants at several points acknowledged liability for expenses – even to the amount – and never paid until the day the pretrial conference order was due, and did not pay | Sustained |

| | | |
|---|---|---|
| bridge loan. The parties were discussing possible solutions, such as execution of a "waiver." *See* 222:3-13.<br><br>The document is hearsay because it contains statements by Mr. McLaughlin offered for the truth of the matter asserted. *See* 223:9-13.<br><br>The testimony is more unfairly prejudicial than probative because pursuant to the Court's ruling on the jury instructions, the parties' behavior *after* a dispute has arose between the parties should not be considered by the jury to interpret the terms of the contract. | any interest.<br><br>Accordingly, as to the expenses, Plaintiff is not introducing this testimony to show liability for a disputed claim, etc., because FNX ultimately paid the claim. However, the timing of the acknowledgment that expenses were due, and the timing that the expenses were ultimately paid, is relevant to FT Partners' claim for interest on the expenses, and is especially relevant to the extent FNX takes the position that there was any particular reason for not paying the expenses until the day before the filing of the joint pre-trial conference order.<br><br>Additionally, the reference to the waiver tends to prove that Mr. Naib was aware – even when there was a dispute between the parties – that the Advisory Agreement required a fee for the Conning-Lazard transactions. Why else would a waiver be necessary?<br><br>Plaintiff does not read the Court's ruling on its jury instruction to state that this testimony is irrelevant to Mr. Naib's understanding of the contract. Even after a dispute has arisen, Mr. Naib believes that a waiver of the Conning- | |
DECHERT LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANTS' UNRESOLVED DEPOSITION OBJECTIONS     C 07-1298 JSW

| | | | | |
|---|---|---|---|---|
| | | | Lazard fee is necessary – completely contrary to the position that he takes in this litigation.<br><br>Mr. Naib's statements are admissions; Mr. McLaughlin's are not being offered for their truth. | |
| | 227:15:228:22 | Inadmissible settlement communications, Rule 403<br><br>The testimony consists of settlement communications. By August, 2004 a dispute had developed between the parties as to the Conning-Lazard transaction and fees claimed over the Trident bridge loan and were discussing possible solutions, such as execution of a "waiver." *See* 227:15-228:2.<br><br>The testimony is more unfairly prejudicial than probative because pursuant to the Court's ruling on the jury instructions, the parties' behavior *after* a dispute has arose between the parties should not be considered by the jury to interpret the terms of the contract. | Again, this is not an inadmissible settlement communication, because there is no offer to compromise or compromise negotiations. This shows that Mr. Naib thought a waiver of the Conning-Lazard transaction fees was necessary until the lawyers got involved. | Sustained with respect to 228:3-22. Overruled as to remainder. |
| | 232:16-234:16 | Inadmissible settlement communications, Rule 403, Lack of foundation<br><br>The testimony references settlement communications. By August, 2004 a dispute had clearly developed between the parties as to the Conning-Lazard transaction and fees claimed over the Trident bridge loan. | This testimony is critical to Plaintiff's claim for the $100,000 delayed retainer. Here, in this testimony, Mr. Naib admits that he believed that the $100,000 retainer would be due and owing to FT Partners after completing the Conning-Lazard financing. There is no offer to compromise here; rather, this e-mail | Overruled |

| | | | |
|---|---|---|---|
| | The testimony is more prejudicial than probative because pursuant to the Court's ruling on the jury instructions, the parties' behavior *after* a dispute has arose between the parties should not be considered by the jury to interpret the terms of the contract.<br><br>The witness states that "I really am trying to remember, but I can't" concerning the $100,000 delayed retainer fee. It thus cannot be counted as an admission. *See* 233:19-23; *see also* 234:16 ("I would assume so"). | and the testimony solely discuss FNX's potential exposure to claims from FT Partners, which was important to Conning and Lazard, and Mr. Naib, in connection with the Conning-Lazard financing. This is clearly not covered by 408, since there is not evidence of any of the types of communication in Rule 408(a)(1) or (2).<br><br>FNX's recounting of the testimony is incomplete. Mr. Naib also testifies that the $100,000 "must be" the $100,000 in the advisory agreement.<br><br>Even after the dispute has arisen, Plaintiff can think of hardly any more probative evidence than the defendant admitting to a third party that he owes a certain sum which is the subject of the dispute. | |

Dated: June 11, 2009

Respectfully submitted,

DECHERT LLP
H. JOSEPH ESCHER III
D. CHRISTOPHER BURDETT

By: _____/s/_____
    D. CHRISTOPHER BURDETT
    Attorneys for Defendants
    FNX LIMITED and FARID NAIB

Case3:07-cv-01298-JSW Document85 Filed06/26/09 Page10of11

13478465.1.LITIGATION

Dated: June 26, 2009

*IT IS SO ORDERED*

*Judge Jeffrey S. White*